UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DUSTIN RYKS,**<br>   Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-1954** |
| **DEPARTMENT OF HOMELAND SECURITY,**<br>   Defendant | **SECTION "E"** |

## ORDER AND REASONS

Before the Court is Defendant Jeh Johnson, Secretary, Department of Homeland Security's partial motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1] The Court has reviewed the briefs, the record, and the applicable law, and now issues this Order and Reasons.

## BACKGROUND

On August 27, 2014, Plaintiff Dustin Ryks filed this Title VII action alleging discrimination in employment based on gender and race, retaliation for protesting protected activities, and hostile work environment based on race.[2] Plaintiff, a federal employee of the Department of Homeland Security ("the agency"), alleges that he was treated disparately on account of his gender (male) and race (Caucasian) while working at as a Supervisor Transportation Security Officer ("STSO") for the Transportation Security Administration ("TSA") at Louis Armstrong International Airport in New Orleans, Louisiana.[3]

Plaintiff alleges in his Complaint that since January 5, 2013, and continuing to the present, he has been the victim of gender and race discrimination, harassment, and

---
[1] R. Doc. 5.
[2] R. Doc. 1, p. 1.
[3] *Id.*, pp. 1–2.

1

retaliation as the result of his lodging an internal complaint of employment discrimination with the agency as well as his filing a formal Title VII employment discrimination complaint through the Equal Employment Opportunity Commission ("EEOC").[4] Plaintiff alleges that his TSA supervisor treated another STSO more favorably based on race and gender and disciplined Plaintiff more harshly than the other STSO for same or similar conduct.[5]

On January 24, 2013, after Plaintiff received a letter of counseling from his immediate TSA supervisor, Plaintiff claims he sent an email to one or more of his management supervisors alleging gender and race discrimination by his TSA supervisor in connection with the issuance of the letter of counseling.[6] Plaintiff requested a meeting with management to attempt to resolve the letter of counseling amicably, and Plaintiff claims management told him during this meeting he "should proceed with caution in making such an allegation because if such an allegation were proved to be false, [] the Plaintiff would be subjected to adverse employment action for having made this complaint."[7] Plaintiff asserts that he perceived this statement to be a threat.[8]

After this meeting, Plaintiff made contact with an EEO counselor on February 25, 2013.[9] Plaintiff alleges he then received a pre-disciplinary letter from his supervisor on March 7, 2013 for alleged conduct that transpired weeks before the date of the letter and weeks before he filed the EEO complaint.[10] Plaintiff contends the March 7, 2013 letter

---

[4] *Id.*, p. 3.
[5] *Id.*, p. 6.
[6] *Id.*, p. 3.
[7] *Id.*, pp. 3–4.
[8] *Id.*, p. 4.
[9] *Id.*
[10] *Id.*

2

was an escalation of his supervisor's discrimination against him.[11] Plaintiff states he proceeded with his formal EEO complaint on or about May 1, 2013, after all internal methods of resolution of Plaintiff's initial EEO complaint failed.[12] After his formal complaint was filed, Plaintiff alleges he was issued another letter of counseling from his supervisors on July 1, 2013, this time for conduct which allegedly stemmed from acts occurring in March 2013.[13] He also received a letter of reprimand from his supervisor on August 15, 2013.[14]

After the investigation into Plaintiff's formal EEO complaint was completed, Plaintiff requested a hearing on his EEO claims before an Administrative Law Judge ("ALJ"). A one-day administrative hearing was held on May 7, 2014, and the ALJ ruled that the agency committed a *per se* violation of Title VII because Plaintiff was threatened with adverse employment action if he continued to file an EEO complaint against his supervisor.[15] However, the ALJ found that the agency did not retaliate against Plaintiff when he received the aforementioned 2013 letters of counseling and reprimand.[16] Plaintiff then filed the instant Complaint in federal district court contending the ALJ erred in finding no retaliation, no race or gender discrimination, and no hostile work environment.[17]

In his Complaint, Plaintiff also "contends that retaliation for protesting protected activities continues and continued when in March, 2014, the Plaintiff was denied a transfer to another airport which had two or more openings for the Plaintiff's position,"

---

[11] *Id.*
[12] *Id.*, p. 5.
[13] *Id.*
[14] *Id.*
[15] *Id.*, p. 6.
[16] *Id.*
[17] *Id.*

3

and also "on or about June 2014, he applied for and qualified for a promotion, but that he was not even allowed to interview for the position, and believes that said conduct constitutes ongoing discrimination/retaliation against him for filing and proceeding with the EEOC hearing in this case"[18] (collectively, the "2014 events"). Plaintiff seeks compensation for lost employment opportunities, emotional distress, and attorneys' fees and costs.[19]

In response to Plaintiff's Complaint, Defendant filed the instant motion to dismiss Plaintiff's "claim of being discriminatorily denied a transfer to another airport and his claim of being discriminatorily denied a promotion" based on the 2014 events for lack of subject-matter jurisdiction.[20] Defendant contends these two claims must be dismissed because Plaintiff failed to exhaust his administrative remedies with respect to the 2014 events.[21]

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[22] A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject-matter jurisdiction.[23] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[24] "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in

---

[18] *Id.*, p. 7.
[19] *Id.*
[20] R. Doc. 5, p. 1.
[21] *Id.*
[22] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).
[23] *See* Fed. R. Civ. P. 12(b)(1).
[24] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).

4

the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[25] The party asserting jurisdiction bears the burden of establishing that the district court possesses subject-matter jurisdiction.[26]

## ANALYSIS

Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination on the basis of race, color, religion, gender, or national origin in federal and private employment.[27] An aggrieved federal employee may bring Title VII claims against his federal employer only after he has timely exhausted all administrative remedies.[28] There is a distinct EEO complaint process for federal employees: unlike a private sector employee, a federal employee must first seek internal review of his grievances.[29]

To initiate the internal review, a federal employee must first contact an EEO counselor at the agency's EEO office.[30] If the counselor cannot resolve the dispute informally, the counselor will notify the employee of his right to file a formal complaint with the agency.[31] After the formal complaint is filed, an EEO investigator is assigned to investigate the federal employee's EEO complaint. Once the investigation is completed, the employee may request a hearing to be conducted by an ALJ appointed by the

---

[25] *In re FEMA*, 668 F.3d at 287.
[26] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[27] 42 U.S.C. § 2000e, *et seq*.
[28] *See* 42 U.S.C.A. § 2000e–16; 29 C.F.R. § 1614.105(a); *McClain v. Lufkins Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).
[29] *See Rivers v. Geithner*, 548 F. App'x 1013, 1016 (5th Cir. 2013). For a detailed explanation of the exhaustion process for federal employees, see *Allen v. U.S. Dept. of Agric.*, No. 13- 174, 2014 WL 4725366, at *3 (N.D. Miss. Sept. 23, 2014).
[30] An aggrieved federal employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).
[31] 29 C.F.R. § 1614.105(d). The formal complaint with the agency must contain a signed statement that is "sufficiently precise to identify the aggrieved individual and the agency and to describe generally the action(s) or practice(s) that form the basis of the complaint." *See* 29 C.F.R. § 1614.106; 29 C.F.R. § 1614.101–110.

EEOC.[32] If a hearing is requested, as is the case here, the employee may file suit in federal district court only after an administrative judge has issued a decision and the agency has taken final action.[33] If a federal employee files suit in district court before taking these steps, the employee's Title VII claims must be dismissed for lack of subject-matter jurisdiction because the employee failed to exhaust his administrative remedies.[34]

When analyzing exhaustion, the scope of an EEO complaint is construed somewhat broadly to "protect[] unlettered lay persons making complaints."[35] In the Fifth Circuit, the scope of a Title VII suit may "extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge."[36] Thus, "the court asks whether the charge 'stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges against [it].'"[37]

It is undisputed that Plaintiff filed a formal EEO complaint alleging retaliation and discrimination based on race and gender, which Plaintiff amended on July 26, 2013 and August 16, 2013 to include additional allegations for investigation.[38] The following allegations ultimately were accepted for investigation by the agency's EEO office:

---

[32] 29 C.F.R. § 1614.108(a); 29 C.F.R. § 1614.109(a).
[33] *See* 29 C.F.R. § 1614.110.
[34] *Fitzgerald v. Sec'y, U.S. Dep't of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997) (citing *Porter v. Adams*, 639 F.2d 273, 276 (5th Cir. 1981) (noting that exhaustion is "an absolute prerequisite" to suit under § 2000e–16); *Edwards v. Department of the Army*, 708 F.2d 1344, 1346 (8th Cir. 1983)).
[35] *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).
[36] *Id.* (internal quotation marks and citation omitted). "A Title VII cause of action 'may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.'" *Id.* (quoting *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)).
[37] *Vicknair v. Louisiana Dep't of Pub. Safety & Corr.*, 555 F. App'x 325, 332 (5th Cir. 2014) (unpublished) (quoting *Simmons–Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 272 (5th Cir. 2013) (citations omitted)). In the case of a federal complaint, the respondent agency conducts the investigation. *See* 29 C.F.R. § 1614.108.
[38] R. Doc. 5-3, p. 1; R. Doc. 10, p. 2; R. Doc. 10-2, pp. 1–2.

> The Complainant alleges that while employed as a Transportation Security Officer . . . at the Louis Armstrong International Airport in New Orleans, Louisiana, he was subjected to discrimination and non-sexual harassment on the bases of race (White), sex (male), and retaliation (opposed discriminatory management practices and current EEO activity) when:
>
> 1. On January 24, 2013, he was issued a Letter of Counseling;
>
> 2. On an unspecified date, after complaining to management that he was being discriminated against, he was told that if he filed an EEO complaint that lacked merit, he would be subjected to an adverse employment action;
>
> 3. Beginning on January 5, 2013, and continuing, his supervisor, has treated him harshly; . . .
>
> 4. On March 7, 2013, he was issued a pre-disciplinary letter[;] . . .
>
> 5. On or about March 18, 2013, he was charged as Absent Without Leave, despite the fact that he had previously submitted a Leave Request;
>
> 6. On March 24, 2013, a Human Resources (HR) Specialist alleged that the Complainant stated that management was "out to get" one of his coworkers and initiated an investigation; . . .
>
> 7. On July 1, 2013, he was issued a Letter of Counseling for issues stemming from the investigation described above[;] [and]
>
> 8. On or about August 15, 2013, he learned that the March 7, 2013, pre-disciplinary letter would become a Letter of Reprimand.[39]

Plaintiff's formal EEO complaint, as amended, does not include any allegations relating to the denial of a transfer request in March 2014 or the refusal to allow Plaintiff to interview for a promotion in June 2014. Although Plaintiff could have requested to amend his complaint again or could have filed a motion with the ALJ to amend his complaint,[40] Plaintiff did not do so. Plaintiff also could have filed a new EEO complaint with allegations concerning the 2014 events, but he did not. Thus, for Plaintiff to be able to assert claims relating to the 2014 events in this action, the allegations in Plaintiff's

---

[39] R. Doc. 5-3, pp. 1–2.
[40] *See* 29 C.F.R. § 1614.106(d).

formal EEO complaint must have stated sufficient facts to trigger an investigation into the 2014 events such that the agency was put on notice of Plaintiff's claims involving the 2014 events.

Although Plaintiff's EEO complaint includes allegations of discrimination and retaliation, Plaintiff points to no evidence showing the scope of the EEO investigator's investigation into Plaintiff's EEO complaint encompassed the 2014 events. There is no letter from the agency's EEO office "accepting" for investigation allegations concerning the 2014 events. Nor is there any claim that the investigative file mentions either 2014 event. Furthermore, one of the events took place only two months before the ALJ hearing, which makes it unlikely that event could have been included within the scope of the EEO investigation,[41] and the other 2014 event took place *after* the hearing was completed.[42] Based on this timing, the investigation into Plaintiff's EEO complaint cannot reasonably be expected to include either 2014 event such that the agency would have been put on notice of Plaintiff's claims involving these events.[43] For this reason, Plaintiff has not exhausted his claims relating to the 2014 events.

The Fifth Circuit has established a narrow exception to the general rule that

---

[41] Plaintiff's ALJ hearing took place on May 7, 2014. The investigation into the allegations in Plaintiff's EEO complaint had to be completed *before* Plaintiff could even request a hearing. *See* 29 C.F.R. § 1614.108(e), (f). The Court has not been provided with the exact date the investigation was completed or when Plaintiff received notice of his right to request a hearing; however, based on the relevant regulations, the investigation should have been completed no later than February 2014. Plaintiff's EEO complaint was last amended on August 16, 2014. Plaintiff should have received a copy of the investigative file and notice of his right to request a hearing no later than February 12, 2014—180 days after Plaintiff's complaint was last amended. *See* 29 C.F.R. § 1614.108(f). Thus, the EEO investigation was, in all likelihood, completed prior to both 2014 events taking place.
[42] "A person cannot reasonably expect a concluded investigation to include an event that has not yet occurred." *Sapp v. Potter*, 413 F. App'x 750, 752 (5th Cir. 2011) (per curiam).
[43] Plaintiff argues the agency had notice of the claim relating to the denial of his transfer in March 2014 because, in Plaintiff's April 16, 2014 Pre-Hearing Report, Plaintiff listed an email chain about his transfer request as an exhibit that he intended to use at the ALJ hearing in relation to his claim of unlawful retaliation. R. Doc. 10, p. 2; R. Doc. 10-2, p. 11; R. Doc. 10-1. However, Plaintiff's listing this email chain as an exhibit does not mean the EEO investigation encompassed the denial of transfer event. Further, Plaintiff makes no argument that the agency had notice of his allegations involving the June 2014 event.

exhaustion of administrative remedies is required before filing suit in federal district court—the *Gupta* exception. Plaintiff argues his claims relating to the 2014 events fall within this exception. The *Gupta* exception allows a plaintiff who has a properly exhausted charge before the court to pursue a retaliation claim that was not presented to the EEOC if the acts underlying the retaliation claim came after, and grew out of, the first EEOC charge.[44] The Fifth Circuit has explained the practical reasons and policy justifications for this exception:

> "It is the nature of retaliation claims that they arise *after the filing of the EEOC charge.* Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case[,] a double filing that would serve no purpose except to create additional procedural technicalities . . . ."[45]

Plaintiff argues that his claims relating to the denial of his transfer request and the agency's refusal to let Plaintiff interview for a promotion fall within the *Gupta* exception because both events occurred *after* he filed his EEOC charge and the retaliation claims grew out of the administrative charge properly before the Court.[46] The Defendant responds that the *Gupta* exception does not apply to Plaintiff's claims relating to the 2014 events because the *Gupta* exception is applied only to retaliation claims alone and not where both retaliation and discrimination are alleged.[47] Defendant argues Plaintiff alleges retaliation *and* discrimination in connection with Plaintiff's claims relating to both 2014 events. Thus, Defendant asserts these claims must be dismissed because they are unexhausted and do not fall within the *Gupta* exception.

---

[44] *Gupta v. E. Texas State Univ.*, 654 F.2d 411,414 (5th Cir. 1981). The continued applicability of the *Gupta* exception has been questioned in light of the Supreme Court's decision in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002). *See Simmons–Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 273 (5th Cir. 2013) (unpublished). However, the Fifth Circuit has declined to address the continued viability of *Gupta* post-*Morgan*. Thus, *Gupta* still governs in this circuit.
[45] *Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2007) (alterations and emphasis in original) (quoting *Gupta*, 654 F.2d at 414).
[46] R. Doc. 10, p. 4.
[47] R. Doc. 5-1, p. 6.

The *Gupta* exception does not apply in cases in which the plaintiff asserts a new claim based on both retaliation and discrimination.[48] Paragraph 16 of Plaintiff's Complaint, which concerns the March 2014 event, states:

> The Plaintiff further contends that *retaliation* for protesting protected activities continues and continued when in March, 2014, the Plaintiff was denied a transfer to another airport which had two or more openings for the Plaintiff's position, and which responded to the Plaintiff's inquiry for transfer until the defendant put the transferor airport on notice that the Plaintiff had a letter of reprimand in his file, and should not be allowed to qualify. Following this unwarranted transfer of information, the Plaintiff was denied the transfer because of the existence of the reprimand, and the defendant's last minute effort to minimize the damage already done by removing the letter of reprimand, pre-hearing, further showed *retaliation* against the Plaintiff.[49]

There is no mention of discrimination in paragraph 16. This is contrasted with paragraph 17, which addresses the June 2014 event: "Finally, the Plaintiff alleges that on or about June 2014, he applied for and qualified for a promotion to TSM, but that he was not even allowed to interview for the position, and believes that said conduct constitutes ongoing *discrimination/retaliation* against him for filing and proceeding with the EEOC hearing in this case."[50]

The Court finds that even though the March 2014 denial of transfer occurred after Plaintiff filed his EEO complaint, this retaliation claim as alleged grew out of his prior exhausted claim. As a result, his claim relating to the March 2014 denial of transfer falls under the *Gupta* exception. However, with respect to the failure to allow Plaintiff to interview for a promotion in June 2014, Plaintiff alleges this conduct constituted discrimination *and* retaliation. Thus, the *Gupta* exception does not apply with respect to the June 2014 event, as this new claim is based on both retaliation and

---

[48] *See Simmons–Myers*, 515 F. App'x at 273; *Galarza v. Ochsner Health Sys., Inc.*, No. 12-722, 2014 WL 1431708, at *8 n.5 (M.D. La. Apr. 14, 2014).
[49] R. Doc. 1, ¶ 16 (emphasis added).
[50] *Id.*, ¶ 17 (emphasis added).

10

...

discrimination. Because Plaintiff has failed to exhaust his administrative remedies with respect to his discrimination and retaliation claim relating to the agency's refusal to allow him to interview for a promotion, Plaintiff is precluded from bringing this claim before the Court. Accordingly, the Court lacks subject-matter jurisdiction over the June 2014 unexhausted claim.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Partial Motion to Dismiss[51] is **DENIED IN PART** with respect to Plaintiff's claim regarding the March 2014 denial of his transfer request[52] and **GRANTED IN PART** with respect to Plaintiff's claim regarding the refusal to allow him to interview for a promotion in June 2014.[53]

**IT IS FURTHER ORDERED** that Plaintiff's claim for discrimination and retaliation as alleged in paragraph 17 of the Complaint relating to the refusal to allow Plaintiff to interview for a promotion in June 2014 is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**New Orleans, Louisiana, this 29th day of May, 2015.**

*Susie Morgan*
SUSIE MORGAN
UNITED STATES DISTRICT JUDGE

---

[51] R. Doc. 5.
[52] R. Doc. 1, ¶16.
[53] *Id.*, ¶17.